v. Leanne Davis at the lead cross appellate by Jeffrey Reba. Mr. Reba? Mr. Reba? My voice is very bad. Just begin. Thank you for your support, counsel. My name is Dustin Jensen. I represent the appellant client, Michael Davis. The answer to two questions will determine the outcome of this appeal. The first question is, does a dissolution of marriage proceeding filed in 2013 constitute the same cause as an action to recover on a breach of contract that occurred in 2015? The second question is, do some breaches of contract in Illinois not have a remedy? If the court answers both of these questions in the negative, then it's our position that the court should find for the appellant, reverse the trial court, and reverse the trial court. This appeal stems from a breach of contract action filed by Michael Davis claiming that his ex-wife, Leanne Davis, breached their post-nuptial agreement. At the trial level, the court dismissed this complaint pursuant to 2615, 2619A3, which says that complaint can be dismissed if there's another action pending between the same parties for the same cause, and 2619A9, claiming that there was affirmative matter that defeated the claim. We are asking that the court find that each of those dismissals was improper, reverse the trial court. In doing so, review its dismissals de novo, and then also find that there were no sanctions which the defendant is requesting. With respect to the standard of review, the parties agree that the standard is de novo in all dismissals except there is one discrepancy. Under 2619A3, the defendant is claiming that the court should employ an abusive discretion standard. It is our position that the court should also employ a de novo standard for the 2619A3 dismissal in this case. Under 2619A3, there is a two-level analysis that the trial court goes through. First, it determines whether the two causes of action constitute the same cause and include the same parties. If the answer to that initial question is no, then the dismissal motion should be denied. If the answer to that question is yes, then the court does a four-factor discretionary analysis test. It looks at the factors of comedy, prevention of multiplicity, likelihood of obtaining complete relief, and the range of effect that the other cause of action may have on the present cause of action. In this case, the trial court did not look at the discretionary factors. It simply said, this is the same cause as the previous case. We're going to dismiss it for that reason. If we are successful in our appeal, the remedy will be for this court to find that as a matter of law, the incident case is not the same cause as the dissolution proceeding. And therefore, there is no discretion that comes into that finding. Once that finding is made, the trial court has no discretion to dismiss the complaint. Therefore, we say that this appeal is over a question of law, and we ask the court to employ a de novo, so there's a review when we're doing that. So how are you asking us to apply those factors? We don't believe that the factors come into play, because the factors only come into play if the court finds that the two proceedings constitute the same cause or come out of the same transaction. Our request of relief is a finding that as a matter of law, the dissolution proceeding and the breach of contract proceeding do not constitute the same cause, that they come out of different transactions. If that finding is made, you never get to the discretionary factors test, because once that finding is made, a denial is inappropriate. And what's our standard of review to determine that, whether they are the same or not? It is our position that the standard of review on that question... Because implicitly the court found they were, didn't it? I'm sorry. What did the court find? The court found that they were the same cause. Right, right. It is our position that this court's standard of review is a de novo standard of review. Now, I will be frank, that we could not find a case that says in 2619A3, the discussion of whether they're the same cause is a de novo standard of review. But what we did find is that in the res judicata context, that is a de novo standard of review. This is cited in our brief. And the res judicata test, if it's the same claim or controversy, is the same exact test that 2619A3 employs when determining whether it's the same cause. And that is, did the true cause of action arise out of the same transaction or occurrence? Therefore, where logic takes us from that is that if the same test is reviewed de novo in a res judicata context, it has to be reviewed de novo in a motion to dismiss context. Again, the reason why 2619A3 is the only motion to dismiss that isn't automatically a de novo review is because there's these four discretionary factors, which the trial court never looked at, and which if we are right in our argument that these two actions don't constitute the same cause, the trial court would have not been able to look at because once there's a finding that it's not the same cause, the motion to dismiss must be denied. There's no discretion after that point. That's why we think that de novo is the proper standard for this 2619A3 appeal. But doesn't it really boil down to that you need us to determine whether or not this is a separate cause of action, whether you can bring an action for breach of a post-nuptial agreement in the absence of either a divorce or a legal separation? Correct. I believe that is the issue, is whether this is the same cause. I mean, to me, that is the issue, is that there was a dissolution proceeding filed in 2013. In 2015. That triggered this, that triggered, I mean, by its own terms, that this agreement is in order to outline how the wall should be divided in the event of divorce or legal separation. Correct. So it was triggered and it was entered and it was filed over during the dissolution proceeding, this agreement. Correct. So 2013, I'll call that the first action, dissolution proceeding filed. If there had been no dissolution proceedings, no legal separation, no marital acrimony, do you think your client could bring a cause for breach of this agreement? No, because at that point, there was no, the defendant would not have had a duty to comply with the contract. The filing of the divorce proceeding is what would have given the duty to the defendant to agree to split up the property pursuant to that contract. It's our contention that once the defendant said, no, I'm not going to follow that contract, that's when the breach occurred, which, again, was two years after the filing of the 2013 divorce proceeding. So you're saying those are separate? Correct. The test for whether two actions constitute the same cause is whether they occur on the same transaction or occurrence. And so under our analysis, the first cause was the dissolution proceeding filed in 2013. There's clearly actions or transactions and occurrences that happened prior to the filing of that complaint from which that complaint arose. What relevancy is that? You've got a dissolution filed, correct? Correct. You have already standing an agreement, postnuptial agreement, as to distribution of assets and assignment of attorney fees, I assume, right? Correct. Okay. And that exists, and then there's a dissolution filed, and then there's a repudiation of that agreement. Correct. Okay. So what our claim is, at least with respect to whether these two actions constitute the same cause, in 2013, when the dissolution proceeding was filed, the transactions and or occurrences that that arose out of necessarily had to happen prior to 2013. It's the breakdown of the marriage, you can call it. Two years later, in 2015, is when the defendant refuses to comply with the postnuptial agreement. At that point, there's another transaction or occurrence, her refusal to comply with the postnuptial agreement, that is not the same transaction or occurrence that caused the filing of the 2013 dissolution proceeding. Therefore, under the testament 26193, there are two separate causes here. Well, we don't know if there's a breakdown in the marriage, a postnuptial agreement, a postnuptial agreement. Sure, but I guess what our point is, is that. It's like in the event of. The dissolution proceeding was filed in 2013. Something had to happen before 2013 that caused the dissolution proceeding, that made one party want to file the dissolution proceeding. The breach of contract doesn't happen until two years after the fact, after the filing of the dissolution proceeding. As they're going through a dissolution. Correct. Okay. And does a dissolution proceeding encompass distribution of assets and assignment of attorney fees? Well, maybe without a postnuptial agreement, but our position is that once you have a postnuptial agreement, now she breached this contract. And so you couldn't go in and try to use the statute, the Marriage and Dissolution Act, because there's a contract that covers the distribution of these assets. And so distribution of the assets is covered by the contract, and then there's a separate breach of contract remedy for the damages that were caused by the breach of contract. Didn't all of this arise out of the dissolution? I mean, ultimately. Well, I mean, the acts that gave rise to the breach of contract action arose out of the dissolution proceeding. However, we would argue that it's a different transaction or occurrence. Why isn't this different from non-payment of child support? You pay child support for two years and then stop. Well, the reason why – and we looked into what was the proper way to handle this situation. To me, the difference in that situation is that this was a contract that governed the party's property rights. It's not a statutory mandate. So we couldn't go in and ask the court to look at the factors under the Dissolution and Marriage Act, because there's a contract here that governed what each party was supposed to get. And you were in the divorce when you determined, when you had determined, that she violated the contract, right? Correct. Correct. Correct. So why couldn't you have pursued that action? Again, we did look into it, and what we came to the conclusion of was that doing that would be a multifarious complaint that would confuse the issue before the trial court. Our analysis of this matter is that there's a divorce case. It deals with the split-up of the property owned by the parties during marriage. Separate from that case is a breach of contract case that occurred when the wife refused to comply with the postnuptial agreement. It doesn't affect the substantive terms of the postnuptial agreement. That still governs this is what you get under our agreement. However, if there's no remedy for the breach of contract, then she could breach the contract without Illinois ever giving a remedy to the plaintiff in this matter. Because at some point, he needs to be able to get remedy for the breach of contract. And if we can't do it under this case, I don't know that there is a remedy for him in this situation. That's why I say that one of the questions to be answered is, is there a certain situation in Illinois where a breach of contract just doesn't have a remedy? Because there's been no breach of contract litigation here. It's our position that the dissolution proceeding deals with splitting up the marital assets. And if she took some act outside of that that calls for a breach of contract damages, that's a separate action. He's saying that every time there's an agreement signed within the context of a separate action to be filed, there's a separation agreed between the parties. And again, it's broken by one party two years later. That's a breach of contract, actually. I think the distinguishing factor in this case is that the contract was not breached until after the dissolution was filed. Assuming that, in my question, assuming that the parties abide by the agreement for a couple of years, and then when the parties decide not to agree or not to act. Yeah, I think that at that point, the parties who agreed by the other parties' failure to act, to abide by the contract, has to have some remedy. And I guess that's the issue. If the court's opinion is that remedy needs to be brought in a family court, I think that's a different issue than dismissal of this case with prejudice without giving the agreed plaintiff any remedy for the breach of contract. Again, I don't know that, under our research, I don't know that in this case that it would have been brought in a family court, because then you're confusing the issues. You're confusing the issues of here's the separation of the marital estate versus here are contract damages for breach of the postnuptial agreement. What was the breach of the postnuptial agreement? So when the postnuptial agreement was entered into court, she refused to comply with the property distribution required in the postnuptial agreement and claimed it was unconscionable. Therefore, my client had to spend money on an attorney proving its conscionability. The reason why I don't think that that has any effect on this case is that there has never been an allegation, evidence, or a finding on a breach of contract. This issue has not been raised before any court. It's a separate issue. I liken it to if you have a breach of contract between person A and B, and two years into that litigation, person B punches person A in the face, let's say. Person A can sue person B for battery. Yeah, they still have a cause of action going on over here, but it's a separate cause. It arises out of a different transaction. At the essence, that's what we're looking at here. It's a separate cause in what arises in the dissolution proceeding. But does it say anywhere in this agreement that in the event that there is a dissolution proceeding filed that she couldn't claim it was unconscionable or that he wouldn't have to pay attorney's fees? And that's the cause you're getting to is that if they stay together for a certain period of time that, you know, if there was a divorce filed after the expiration of that time, he'd pay her attorney's fees. If she was, you know, a little bit less, if she's working 100 percent, if she was still in school, and that when she filed for dissolution, then in fact she asked the court to determine whether or not the agreement was valid. And it did at the end of the day, but your client's argument is that he shouldn't have to pay those attorney's fees because she breached the agreement. She asked the trial court in the divorce proceeding to throw this agreement out, which is what your client says is the breach, right? Correct, but let me just clarify that the only damages that are being claimed are the damages that are being directly linked to this attacking of the post-nuptial agreement. He's not saying I no longer have to pay any fees. He's saying any fees that were caused by the breach of contract attacking the post-nuptial agreement, I should have a remedy, and those remedies are attorney's fees or the amount of attorney's fees caused by that action. With respect to your question about there's nowhere in the contract that it says anything about her having to abide, I would argue that every contract has the implied duty of good faith in that claiming that a contract that you signed is unconscionable and refusing to abide by it breaches that duty of good faith. And therefore, at that point, you sign a case law that says at that point there's a material breach that he doesn't necessarily have to comply with his end. Now, he did. He paid the fees, and now he's trying to get remedy for the damages that was caused by her breach of the contract. Time. Thank you. Thank you, Mr. Gatt. I can't see you, Mr. Reda. I'm just thinking, in fact, I always like to come here and talk about law school or talk about restatement. If someone sues for a breach of contract and they say the defendant promised to paint my garage blue and the contract says the defendant's going to paint the garage red, that's basically what we have here. We have a man coming into this court, as he did in the trial court, saying that his wife breached a provision of a contract, and his only claim damages are the fees that he supposedly incurred in the divorce case. Why shouldn't he have to go into the divorce court to deal with it? These are divorce court fees that were incurred by both parties, I might add. Why should, every time, and I think one of the questions was, are we just going to open the floodgates? Every time someone has an agreement with a spouse, now they can go down the hall in the L Court, and I don't think that's what the public policy, I think that's what the legislature intends, I think that's what the statutes mean. One of my questions I keep scratching my head, they keep saying that there was a breach because my client litigated, which was her every right to do, she litigated the enforceability of the agreement. She lost. Okay, so I found it constable and said we're going to uphold the post-nuptial agreement. That doesn't mean she breached it by asking the court to see if it's valid or not. I think those are two totally different concepts of the claim. It never seems to explain how, if someone has a right to come into court and ask the court to check the validity of an agreement, how that somehow becomes a breach. I think, Justice O'Brien, I think you led me into the point. I was thinking, as you were asking counsel, you know, we have, in will contests, we have that, I think it's called an interloran clause. This is the one where if Joe was going to get $10,000, but Joe was thinking, oh, I got screwed, I want more than the $10,000. You put a clause in there that says, well, Joe, if you attack the will and you lose, now you lose your $10,000 too. I don't see anything in this agreement that says that if my client attacked the validity of it, that somehow that means that because she did, then she is not going to be able to enforce the clause that says he pays everything. You know, I'm back to where I started here. You have a contract that says, here's the postnuptial agreement. There's exchanges on both sides. Mr. Davis gets all his business holdings. He gets a limitation on the amount of maintenance he would have to pay. He could have been way more if they had litigated this for all we know. And as part of that consideration, my client agrees to a clause that Mr. Davis drew that said if there's a case, he's paying his own fees, period. End of story. So what we really have here, that's why I think this is just a frivolous from the very start under 2615. We have someone coming in and saying there's a contract that says I'm going to pay my own fees, but now I want you to pay my fees because, and I guess I always leave myself hanging with because. There's nothing that says if he wins on an issue, he somehow gets to scrap that clause. It says if there's litigation, he pays his own fees. And we're not even talking about, at this point, fees for my client, which you're probably pleased to know that we'll be back here in a few months on the D case. But I think it's important to know. What was the purpose that he pays his own fees? What's your understanding of the purpose that I enter into a contract and I'm going to pay my own fees if there's a dissolution? Isn't there a level of the playing field in the IMDMA? Well, he's talking about paying his own fees. I don't know. We never really got into the question that he had come in and somehow wanted as part of the divorce case for my client to pay him something where he could somehow waive his rights. But what we're talking about here is. I mean, it's like, what is he giving up that he wouldn't have to do otherwise? Well, he's, I guess. I mean, normally, normally you assume your own fees. Am I correct? Right. That's the American law. Right. The whole point is by him, in my view, by him saying that I'm going to pay my own fees. Well, that would be a situation in the level of the playing field where the one spouse is a moneyed spouse and the other is a non-moneyed spouse. And you have fee shifting. Correct? Right. So, I'm at a loss for understanding. Well, the only thing I can think of is that must have been part of the consideration that he was giving. No matter what happens, I'm paying my own fees since you're waiving property and other maintenance claims. But I don't know what would have happened had he said that he was going to pay his own fees and that he came in as part of this divorce case. The facts don't match up, but I think I know where you're going. Yeah. If he had asked my client, well, now you have to pay some fees to level the playing field either at the beginning of the case or you've got to pay some of my fees at the end. I would say in a divorce court, irrespective, let's just take the example, let's say he never even went to Elkport. Let's say he just went in a divorce court so we don't have all this 2-6-19 issue to even deal with. If he's gone in a divorce court, it seems to me that he loses there because the contract he drew that he's claiming fees from says he pays his own fees. I mean, it just seems to me to be so simple that we don't even need to get into parsing all these cases. I agree it looks like we're in a state of flux as to whether the 2-6-19 looks like the cases that we cite don't parse the distinction between whether it's same cause or not same cause and those factors. I don't think they really argue. We never really got to the point of the factors because the trial judge, I think, thought this was so obvious that it needed to be in divorce court. I'm looking right down the hall there. There it is indeed. Go there. And I think the timing of this, I think, is so important because they filed this case. We moved to dismiss this Elk case while the D case was still pending and set for trial. So it's not like they can claim that they didn't know that we were raising that argument or that they weren't proceeding at their own risk by not going down the hall. And even, as I indicated, I think in the brief, that there was a period of time where even after the judge in our Elk case dismissed the case, the D court still had the case under advisement. If he said, hey, if it were me, I would have gone running down the D court and said, wait a second, while we tried this, the judge risinger said, we can't be in front of him, we've got to be in front of you. Let us fight all these fee issues out all at once. And keep in mind, my client, and this is I think you can take judicial notice of this, my client sought fees in the D case. I think another thing that's important is that everything relates when you're dealing with property and maintenance and fees. If there is something wrong on one, that can throw the whole team off and you may end up having to go over everything again completely. So my point there is, it just seems, it snaps up that they weren't satisfied with their chances in divorce court to get these fees. And I think counsel may have just said it best here a few minutes ago, but they did look at this and realized that the statutory factors for fees weren't going to get them anywhere. So we try to go down the hall and go into Elk court and cook up this theory, which I think is just, I mean, it's just contrary to the plain terms of the contract. Again, even if they were in divorce court, the contract says that he pays his own fees. It doesn't say he pays some of his fees or pays all of his fees some of the time or part of the time or if she loses and he wins. It doesn't say that. And we were just here this summer where we had a case, the Lewin case, which is cited in our brief that Justice O'Brien so nicely ruled against us. But I think the point there is, if you take a look, the whole idea of that case was we're kind of on the opposite side of that at this point. But in that Lewin case, we had said we thought there was a basis for a two, that we were the plaintiff, that we should get beyond a 2-6-15 motion to dismiss. And the panel said, well, no, you already had material in the record, which was the post-nuff agreement that was the wrap-up of the divorce. That's basically, I think, what we have here, and that is if we focus in on what the contract says, there can't be a breach of a contract that flows into damages of attorney's fees when the clause in the contract says he doesn't get attorney's fees. Let me talk a little bit about the 2-6-19-A-3. No matter what the test is, it seems to me we're dealing with the same cause. Now, this argument that everything must have happened for the D case before 2013, before Mr. Davis filed, certainly something must have happened because they ended up filing the 13th D case. That doesn't mean that we just closed the curtain at that point. There was all kinds of stuff that happened between 2013 and the end of the divorce. There were issues that arose that put them through a trial. And in any divorce case, it's not like there's some barrier. All of a sudden, you file your case, and then now whatever happens after that, that's something different. I mean, a case has the pre-beginning, has the beginning, and has the case itself. And to say that somehow these are different causes, they're really not because the cause that they're dealing with here is trying to get attorney's fees that Mr. Davis incurred in the divorce case itself. That's the place to go. And the case law says, you know, common sense is the touchstone of these, and it only has to be substantial similarity. So it doesn't matter what the allegations of what Ms. Davis yelled at him in 2012 or 2013. That's not what this is about. We're looking – you've got to hone in on what the actual issue is that he's proceeding here. He's trying to say that my client owes him his fees that he incurred in the divorce case. He's got to go there, and he should go there because he has to look when you're dealing with property and you're dealing with maintenance and dealing with hurt attorney's fees claims. He should use those, if anything, as set-offs or defenses in the divorce case. And for him to wait – let's say he gets a ruling in the divorce case, then goes down the hall of health court, and in this example, he wants to get his fees paid there. That throws the whole thing off from what the court in the divorce case has carefully laid, all the factors, all the assets, all the claims. Well, isn't a lot of this how you define the same cause? Right. Oh, I agree completely, and that's kind of a – I guess that's become a term of art. But I agree with counsel what it means is the same transaction or occurrence. So what we say, whether it's de novo or abuse of discretion, the same occurrence here – it's his attorney's fees that he incurred in the divorce case that he wants to proceed to get in the L Court. And the whole thing's just snacks of drug shopping, porn shopping, and moving down the hall to deal with another judge that you may not want to meet in front of for whatever. Maybe you've already been tipped off, but you don't think you're getting anywhere. Or you want another bite at the apple. You want another bite at the apple. Something of that nature. My question to counsel is going to be the same. Do you see this as even being a separate cause of action, that you can file a breach of a postnuptial agreement outside of a dissolution of marriage action? I don't believe so. That's what I think your whole point is. But I think I agree with counsel. The agreements themselves are usually tied to whether it has to be a divorce or legal separation. So it's really kind of like a will before someone dies. It just kind of hangs in limbo as a postnup or prenup. And it only springs to life when there's a divorce or legal separation that occurs. And that's my point. I don't think you can ever just go down the hall to some place. I suppose maybe if it were the validity of it. Maybe that's the only example I can maybe think of is if someone, for whatever reason, as part of a negotiating strategy wanted to go to a different court where there wasn't yet a divorce case on file to have the agreement construed somehow. Possibly. That's not what we have here. This is not that case whatsoever. Here we're already in divorce. We're already in trying to enforce language that's exactly contrary to what? Two minutes. I haven't seen what difference it makes whether the divorce is still ongoing or if it's over. If there's a so-called breach of a part of the divorce, isn't that a perfect time to bring it over a show of cards? Does it matter if the divorce is over? No, I think if the divorce, whether the divorce, the whole idea of the post-nup in the oral freedom document, usually that sets the terms for what the ultimate judgment is. So maybe the clause that came from the post-nup is now, that was paragraph 17, now it's paragraph 24 of the judgment. But usually you carry forward the promises made in the agreement to make them part of the court orders. If they're violated, it's a brutal show of claws not to go down in the hall to ask for a jury trial in a breach of contract case. The legislature can't possibly be thinking of opening the floodgates every time somebody wanted to claim some breach that it should be done outside of the divorce court. I guess my final point on that issue is I think counsel has made clear that all we're seeking here is the fee. This is not like the post-nup said that my client was going to pay the March 2016 election bill and she didn't do what he had to pay. We don't have anything like that at all. We're not talking about her breaching a term of it. She's only being accused of exercising her rights to attempt to show it was invalid. So once the court has questions, I'll stand aside. I guess not. Thank you, Mr. Riva. Mr. Jensen. Thank you, Your Honors. I think a lot of the argument and the questions today have centered around the idea of this being a fee claim. I think that's where the parties are not seeing eye to eye. This is not a fee claim. This is a breach of contract claim. I agree with you that if there's an order in place and there's a breach, a rule to show cause is a proper remedy there. But this is a claim that we had a contract. You breached the contract. Illinois law provides a remedy in the form of damages for that breach. This is not a case either where the American rule applies because this is not a case where Mr. Davis filed a contract action, recovered on that contract action, and then based on nothing other than his positive results in the first action is requesting fees. There has never been an allegation, a evidence given, or a finding that there's been a breach of contract. This is the first time that Mr. Davis has had the opportunity to put in front of a court whether there was a breach of contract. Now, you may believe that that should have been done in the divorce court. And I guess that's an issue that, as I represented, we looked into. Our analysis was that it would become a multifarious issue. We would have the divorce issues over here, the breach of contract issue over here, and they're better off being divorced where you can deal with the family issues without having to get confused by the breach of contract issues. You can deal with the breach of contract issues without having to deal with the divorce issues. So there's no property division or settlements in that divorce? There is around here. But I guess that's our point is that the court should have just went by the contract with those property divisions. Our claim for breach of contract should not affect what's in that contract with respect to property divisions. This isn't like a non-post-number prenup case where you've got the statutory factors and you look at, okay, you get attorney's fees because you maybe got a little more property over here or whatever. They agree this is how we're going to split up our property. And was that presented to the divorce court? Was what presented? The agreement? Correct. Yes, it was. It was? It was. And was it incorporated into the judgment? Well, yes, eventually. Not at the time of this complaint. Okay, but it was upheld. Correct. Correct. The validity of the contract was upheld. There was never any finding whether her actions constituted a breach of that contract. So your client in the divorce court enforced the contract? I'm sorry? So your client in the divorce, the dissolution, enforced the contract? Correct. But again, there was never any finding of a breach. Our client attached the contract to the petition. The opposing side said it's unconscionable and you can't enforce this contract. We defended that claim. The court said it's not unconscionable. We will split the property pursuant to this contract. There was never any claim regarding was her actions a breach of contract. That's why I think this case is different than most cases where the American Rule is cited or even contemplated. We never litigated this issue. This is a brand-new issue. And it happened, again, two years after the petition was filed. So it wasn't even practical for us to say we want to enforce and we have this breach of contract action. Now, I guess two years down the line we could have asked for leave to amend our petition and have a breach of contract action or file a third-party complaint. But I don't know that that solves any of the issues that are allegedly brought up by us such as finding a separate breach of contract action, letting the divorce court handle the post-nup, and letting the law court handle the breach of contract. I would just like to briefly go into the issue of sanctions that defendants have raised. There's three rationales for sanctions, a complaint not well-grounded in the fact, not well-grounded in the law or the modification of existing law, or for an improper purpose. The only allegation of not well-grounded in the fact is the 4.11 provision saying that our client would pay his own fees. As we've stated, we think this is consistent with that. He paid his fees. Now he is seeking damages for a separate breach of contract. The argument about a not well-grounded in the law or a modification of existing law, we relied on Ritter's Supreme Court case in 1943. We couldn't find anything stating on this specific subject. But what Ritter says is if someone does a bad act that causes you fees against a third party, you can sue them for the value of your attorneys' fees. But what you can't do is prosecute a claim against one person's successful issue, and then based on that successful prosecution, request attorneys' fees. We think this is a new situation in the middle, which says we haven't prosecuted this claim to a successful issue. Again, there was never any allegation or finding a breach of contract. So if my client can't bring this complaint, he cannot get a remedy for a breach of contract. That's why we think that this case is, at the very least, a good-faith argument for the extension of existing law. Finally, with respect to the third prong of an improper purpose, the case law says that an improper purpose needs to be a subjective finding, find subjective bad faith. There's been no allegation of subjective bad faith. In the opposing counsel's brief, the only support he says for an improper purpose is, well, it wasn't well-founded, in fact, it wasn't well-founded at all. If you agree with us in our arguments on those two, there's no argument for improper purpose, and there's absolutely no argument for a subjective finding of improper purpose. There's just no argument made, nothing in the record to support that. So at the very least, even if this Court agrees that we should not have filed this breach of contract claim in the law court, it doesn't support sanctions. Thank you very much, Your Honor. Thank you, Mr. Ketson. Thank you both for your argument today. Mr. Ketson. I'll be real brief. No, no, no. Thank you. I have three or four points to make. I apologize. The argument that no one has filed a breach of this contract, I think, is a completely moot point for a couple reasons. One, they never asked anybody to declare that there had been a breach. So I'm back to just asking whether the agreement is enforceable or not. That's not a breach absent not performing some particular clause or proviso or term of the contracts. So that's point one. I'm not sure what their worry about the multifariousness is. I don't mean to be cute, but every divorce I've ever been involved in is multifarious in the extreme. So I don't think that that's a well-taken argument. They now talk about this Ritter case that they cited. If you look at that Ritter case, it's directly on point. What it distinguishes is if someone has been brought into a situation where they've had to deal with a third party. In other words, if the cases are, let's say there's a contract between client and attorney. Well, attorney botches something up, but then he ends up, then the client has to be in litigation with the third party. Well, then if in that litigation there's attorney's fees expended by the client, that's different than this completely. Because here, there's no third party. As I said, there's no Hamlin-Silko bill from March of 2016 that my client is alleged to have not paid. The only argument they're making is that it has to do with attorney's fees. So I disagree vehemently from the standpoint that they don't think this is a sanctionable case. We have a case where they cited authorities. If you look at my brief, some of the arguments they made, basically the major arguments they made about Ritter and some of these, what the contract meant. By the time they get to the brief here, they abandon them, which tells me that they thought those were bogus to begin with or they were to round up the flagpole here. I disagree that this is a subjective bad faith test that we need to meet. It's an objective standard. And again, just because there may not have been the exact same scenario that was brought in some other published opinion, there's plenty of cases that I cite in my brief which I won't bore the court with. They're all discussed where even this court has reversed the denial of sanctions by a trial judge and imposed 375 sanctions. And there's cases, I think the closest one was the guy who comes in and says, well, I've got these permits I want to enforce. Well, wait a second. The record shows your permits are no good. In our opinion, that's really what we have here. We have, and again, leaving all of which court we were supposed to be in aside, the contract says the man's going to pay his own fees, no ifs, ands, or buts. And he comes in and says my client breached and caused him to pay his fees. And I've thought about this. How many times is there something I'm missing here? It just seems so simple that under 2-6-15s, again, he's the guy claiming, I changed my lot nine. I think I want my garage red when my cash rack said that you were going to paint it blue. It's right on point. It is a clear violation of suing to try to enforce an agreement on its face that says the man has no rights. He's trying to get a right somehow created for him that he himself, when he drafts the document, said he didn't have. So I submit that what we're asking the court to do is affirm the dismissal on all bases and I think there's enough here that under 375 and 137, you should be able to determine that this is a frivolous, sanctionable complaint and that we should be ordered by a certain deadline to submit our attorney's fees, breaking them down between the trial court proceedings and the appeal proceedings. At a minimum, we should have a, as the courts may be aware, I think we're both in agreement on the notion that the trial judge, he never got into sanctions because he thought the procedure was messed up and I think we both agree that he really should have ruled out the sanctions one way or another. So at the very minimum, the case has to go back, in our view, to have after an affirmance which we hope will be received from the court to have the court look at the sanctions issues for the first time. So unless the court has any questions, including... Okay, thank you so much, Your Honor. Thank you, Mr. Riva. Thank you, Mr. Jensen. We take this matter under advisement. We thank you with a written disposition.